# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

    Case No. 14-10205-01-EFM

ALFREDO FRANCO, JR.,

    *Defendant.*

## MEMORANDUM AND ORDER

Defendant Alfredo Franco Jr. has been convicted of one count of distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2). One victim, referred to as "Angela," seeks restitution under 18 U.S.C. § 2259. This matter comes before the Court on the United States' Motion for Restitution (Doc. 48). Based on Franco's relative role in causing damages to Angela, the Court grants the Government's motion as modified in this Order for restitution in the amount of $6,000.

### I. Factual and Procedural Background

In October 2015, Defendant Alfredo Franco Jr. was sentenced to 110 months of imprisonment and ten years of supervised release for his conviction of distribution of child pornography. A determination of restitution was deferred to a later date. In November 2015, the

Government filed a motion for an order of restitution, and a hearing was held in February 2016. The Government's motion is now before the Court.

## II.     Legal Standards

Under 18 U.S.C. § 2259, a district court is required to award restitution for certain federal criminal offenses, including offenses involving child pornography.[1] By statute, the issuance of a restitution order is mandatory, and district courts must order a defendant "to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses as determined by the court."[2] The "full amount of the victim's losses" is statutorily defined to include any costs incurred by the victim for—

(A) medical services relating to physical, psychiatric, psychological care;

(B) physical and occupational therapy or rehabilitation;

(C) necessary transportation, temporary housing, and child care expenses;

(D) lost income;

(E) attorneys' fees, as well as other costs incurred; and

(F) any other losses suffered by the victim as a proximate result of the offense.[3]

In *Paroline v. United States*, the Supreme Court imposed a proximate causation standard: "Restitution is therefore proper under § 2259 only to the extent the defendant's offense proximately caused a victim's losses."[4] In an attempt to provide guidance to district courts determining an amount of mandatory restitution, the Court held that

---

[1] *Paroline v. United States*, 134 S. Ct. 1710, 1716 (2014).

[2] 18 U.S.C. § 2259(b)(1), (b)(4)(A).

[3] 18 U.S.C. § 2259(b)(3).

[4] *Paroline*, 134 S. Ct. at 1722.

where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses.[5]

To determine a defendant's relative role, the Court listed seven factors a district court may—but is not required to—consider: (1) "the number of past criminal defendants found to have contributed to the victim's general losses;" (2) "reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses;" (3) "any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted);" (4) "whether the defendant reproduced or distributed images of the victim;" (5) "whether the defendant had any connection to the initial production of the images;" (6) "how many images of the victim the defendant possessed;" and (7) "and other facts relevant to the defendant's relative causal role."[6]

The Government has the burden of proving "the amount of loss sustained by a victim as a result of the offense" under the preponderance of the evidence standard.[7] The district court has "discretion in fashioning a restitution order"[8] and "must assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal

---

[5] *Id*. at 1727.

[6] *Id*. at 1728.

[7] 18 U.S.C. § 3664(e).

[8] 18 U.S.C. § 3664(a).

process that produced the victim's losses."[9] This approach "involves discretion and estimation," and restitution orders should not be arbitrary or capricious.[10]

### III.     Analysis

The Government requests $7,500 in restitution for "Angela," the victim in this case. The Government submits that, in terms of Franco's contribution to Angela's losses, Franco's collection included two movies of the Angela series, which he distributed via his ARES software. The Government asserts that restitution in the amount of $7,500 is reasonable based on the violent criminal conduct depicted in the movies and Franco's associated conduct in dealing with those images. In response, Franco suggests restitution in the amount of $1,000, arguing that this amount is more in line with the restitution amount obtained in other cases involving the same victim.

There is no dispute that Franco distributed the videos and that such distribution is a proximate cause of a portion of Angela's damages. It is also undisputed that Angela suffered losses as a result of the distribution of the videos. Therefore, the question for the Court is the amount of restitution to award Angela.

**A.     Angela's Loss and the *Paroline* Factors**

To arrive at a restitution amount, the first step suggests that the Court determine "the amount of the victim's losses caused by the continuing traffic in the victim's images."[11] Here, the Government submits that Angela has outstanding general losses in the amount of $366,000 to $587,000. This amount was set forth in an affidavit provided by Angela's counsel and based in

---

[9] *Paroline*, 134 S. Ct. at 1727–28.

[10] *Id*. at 1729.

[11] *Id*. at 1728-29.

part on an expert report calculating Angela's outstanding general losses over a twenty-year period.

The next step is for the Court to "set an award of restitution in consideration of factors that bear on the relative causal significance of the defendant's conduct in producing those losses."[12] To determine the amount of such award, "it makes sense to spread payment among a larger number of offenders in amounts more closely in proportion to their respective causal roles and their own circumstances so that more are made aware, through the concrete mechanism of restitution, of the impact of child-pornography possession on victims."[13] As noted above, the factors set forth in *Paroline* may guide the Court in arriving at a proper restitution amount.

**1. The number of past criminal defendants found to have contributed to the victim's general losses**

Both this and other courts looking at this factor interpret it to mean the number of defendants who have been ordered to pay restitution to a particular victim.[14] The Government has provided the number of defendants who have been ordered to pay restitution to Angela as of August 19, 2015. As of that time, 116 defendants have been ordered to pay restitution. Franco asserts that it is likely that the restitution orders have increased since that time as this information is over five months old. The Court, however, is aware of only one additional restitution award to Angela in the intervening time period and declines to speculate as to the number of additional restitution awards that may have been granted.

---

[12] *Id*. at 1728.

[13] *Id*. at 1729.

[14] *See, e.g.*, *United States v. Bellah*, 2014 WL 7073287, at *3 (D. Kan. Dec. 12, 2014); *United States v. Dileo*, 2014 WL 5841083, at *5 (E.D.N.Y. Nov. 4, 2014).

**2. Reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general loss**

The Government has not predicted the number of future defendants who may be convicted of crimes against Angela. The Court finds that this factor is highly speculative and not a workable standard for determining restitution. However, the fact that the videos are not isolated to Franco warrants that the restitution should be spread out among a larger number of offenders.

**3. Any available and reasonably reliable estimate of the broader number of offenders involved**

There is no evidence showing that there are a broader number of offenders involved. Therefore, this factor has no emphasis on the Court's restitution award.

**4. Whether the defendant reproduced or distributed images of the victim**

Here, the Government submits, and Franco does not dispute, that Franco distributed the videos through his ARES software. Thus, this factor weighs in favor of escalating the restitution award.

**5. Whether the defendant had any connection to the initial production of images**

There is no evidence that Franco participated in the original production of the videos. Thus, escalation is not warranted for this factor.

**6. How many images of the victim the defendant possessed**

The Government submits that Franco possessed and distributed two movies of the "Angela series," which is a collection of slides or still images that have been set to music. The images show Angela engaged in a variety of sexual actions, many of which are violent. Angela's face is plainly visible in the images. This factor weighs in favor of an increased restitution award.

### 7. Other facts relevant to the defendant's relative causal role

Outside of its list of recommended factors, the U.S. Supreme Court suggests that the Government "could also inform district courts of restitution sought and ordered in other cases."[15] The Government submits that the post-*Paroline* awards to Angela range from $18.30 to $29,859.00, and the average mean is $3,624.59. In response, Franco points out that the most awarded amount is $1,000 and that the Government's requested restitution is higher than 105 of the 116 reported restitution awards in the Angela cases. Although $1,000 does appear to be the most awarded restitution amount, this amount was only awarded in 23 of 116 reported cases, and for several of these 23 cases, that amount was negotiated as part of a settlement agreement.

The Government also asserts that a restitution order of $7,500 is warranted based on the amounts awarded in *United v. Hosier*[16] and *United States v. Bellah*.[17] In *Hosier*, the defendant possessed six duplicates of one of Angela's images that showed her engaged in a sexual act. Judge Marten ordered the defendant in that case to pay $5,000 in restitution. In *Bellah*, the defendant possessed, in part, images of five victims that showed the victims engaged in sexual acts, some of which were masochistic in nature. This Court granted restitution in the amount of $7,500 to each of those victims. The Court agrees with the Government that, by way of comparison, Franco's conduct in this case is more similar to the conduct in *Bellah* than in *Hosier*, but finds that while both cases are informative, neither is determinative as to the restitution amount in this case.

---

[15] *Paroline*, 134 S. Ct. at 1729.

[16] No. 14-10060-01-JTM (D. Kan. 2015).

[17] No. 13-10169-EFM, 2014 WL 7073287 (D. Kan. Dec. 12, 2014).

**B.     The Restitution Award**

The Court has reviewed other restitution orders by federal district courts that have been issued since *Paroline* was decided on April 23, 2014.[18] Many of these cases involve the possession or receipt of pornographic images. Franco's conduct in this case, however, appears to be more serious in that he was convicted of distributing pornographic videos and some of the videos contain images of Angela engaged in violent sexual acts. The Court has also taken into consideration the restitution ordered in *Hosier* and *Bellah*, although as stated above, it has not found these cases to be determinative. Therefore, having considered the factors outlined in *Paroline* and all relevant evidence, the Court orders Franco to pay $6,000 in restitution.

**IT IS THEREFORE ORDERED** that the United States' Motion for Restitution (Doc. 48) is hereby **GRANTED** as modified above.

**IT IS SO ORDERED**.

Dated this 8th day of February, 2016.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[18] *See, e.g.*, *See United States v. Rogers*, 758 F.3d 37 (1st Cir. 2014); *United States v. Cooley*, 2014 WL 5872720 (D. Neb. Nov. 12, 2014); *Dileo*, 2014 WL 5841083; *United States v. Wencewicz*, 2014 WL 5437057 (D. Mont. Oct. 24, 2014); *United States v. McIntosh*, 2014 WL 5422215 (E.D. Va. Oct. 22, 2014).